# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD A. ROGERS, | CASE NO. 1:09-cv-01298-SKO |
| Plaintiff, | ORDER DISMISSING CERTAIN CLAIMS |
| v. | |
| CHRIS GRIJALVA, et al., | |
| Defendants. / | |

Plaintiff Ronald A. Rogers ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is currently detained at Coalinga State Hospital in Coalinga, California. Plaintiff is suing under Section 1983 for the violation of his rights under the Fourth and Fourteenth Amendment. Plaintiff names Chris Grijalva, Jose Perez, John Sanzberro, and Does 1-10[1] as defendants. Plaintiff has consented to jurisdiction by U.S. Magistrate Judge. (Doc. #8.)

For the reasons set forth below, the Court finds that Plaintiff's first amended complaint states some cognizable claims. The Court will dismiss the non-cognizable claims from Plaintiff's first amended complaint without leave to amend.

///

///

---

[1] Plaintiff does not describe any actions by the Doe Defendants. In the event that Plaintiff identifies another individual liable for claims related to this lawsuit, Plaintiff must join the additional defendant by seeking and obtaining leave to amend his complaint and filing an amended complaint identifying the additional defendant and describing what he or she did to violate Plaintiff's rights.

1

**I.     Screening**

Plaintiff is proceeding in forma pauperis in this action. Under 28 U.S.C. § 1915(e)(2), the Court shall dismiss any action brought in forma pauperis at any time if the Court determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II.    Background**

   **A.    Procedural Background**

Plaintiff filed the original complaint in this action on July 24, 2009. (Doc. #1.) The Court screened Plaintiff's original complaint on March 3, 2010. The Court found that Plaintiff's original complaint stated some cognizable claims and found that some claims were non-cognizable. The Court ordered Plaintiff to either file an amended complaint or inform the Court that he wishes to proceed only on the claims found to be cognizable by the Court.

On May 12, 2010, Plaintiff filed his first amended complaint. (Doc. #14.) This action proceeds on Plaintiff's first amended complaint.

### B. Factual Background

Plaintiff's complaint describes four incidents that occurred between January 29, 2009, and May 21, 2009. Plaintiff contends that Defendants harassed him by awakening him when he was asleep, searching his person and property for contraband, placing him in restraints, involuntarily administering medications, and drawing his blood. Plaintiff claims that Defendants violated his rights under the Fourth Amendment, the Due Process Clause, and the Equal Protection Clause.

Plaintiff alleges that on January 29, 2009, Defendants Jose Perez and Chris Grijalva, along with Julio Zuniga (not named as a defendant in this action), entered Plaintiff's room at 1:30 p.m. and awakened him while searching his room. Plaintiff alleges that he is a "day sleeper" and has repeatedly asked staff at Coalinga State Hospital to refrain from awakening him during the day. Plaintiff contends that the "lack of sleep is literally killing plaintiff." (Verified First Am. Compl. for Declaratory and Injunctive Relief and for Money Damages ¶ 17, ECF No. 14.) Plaintiff's allegations suggest that the searches are performed in a harassing manner. Plaintiff alleges that a few days earlier, Defendant Perez intentionally awakened Plaintiff by knocking on his door and calling out his name very loudly. When Plaintiff did not respond, Perez approached Plaintiff in his bed and screamed Plaintiff's name and told him that someone named Ruben wanted to talk to him.

Plaintiff alleges that on January 31, 2009, Defendants Grijalva and Perez awakened him again while searching the area around his bed. Perez was on his knees searching bags of food underneath Plaintiff's bed while Grijalva was on the other side of Plaintiff's bed searching a locker. A third staff member was standing at the foot of Plaintiff's bed. Plaintiff cursed at Defendants for waking him up then left to use the restroom. When Plaintiff returned, the Defendants were still searching Plaintiff's property. Plaintiff claims "there was no one overseeing the illegal search, not even Ward Government members as required." (First Am. Compl. ¶ 27, ECF No. 14.) Plaintiff then overheard Defendant Perez on the telephone asking the medical department about Plaintiff's prescription for a walking cane. Perez claimed that the prescription had not been renewed by a doctor and seized the cane, causing Plaintiff to "limp[] around, moving only when he is forced to do so." (First Am. Compl. ¶ 31, ECF No. 14.)

Plaintiff alleges that on March 3, 2009, he found Defendant Grijalva alone in his room at

3

around 2:00 p.m., searching under Plaintiff's bed and tampering with Plaintiff's property. When Plaintiff entered the room, Grijalva appeared startled and quickly left.

Plaintiff alleges that in May 2009, a medical nurse informed him that he was scheduled for an outside medical appointment the next morning. However, when Plaintiff was informed that he would be transported to his medical appointment by correctional officers from the California Department of Corrections and Rehabilitation, Plaintiff refused to go. Despite the fact that Plaintiff's appointment was cancelled, Defendant Grijalva came to Plaintiff's bed at 8:40 a.m. and awakened him for the appointment.

Plaintiff contends that Grijalva knew that the appointment had been canceled and that Grijalva "appeared to be showing a perverse smile on his face as he awoke plaintiff." (First Am. Compl. ¶ 44, ECF No. 14.) Plaintiff cursed at Grijalva for intentionally disturbing his sleep and went to the unit supervisor's office. However, the supervisor was not there and on the way back to his room, Plaintiff continued to curse at Grijalva. Two minutes after Plaintiff returned to bed, Grijalva entered Plaintiff's room with psych tech Darla Ainsworth and announced that he would search Plaintiff's bed area again. Five other staff members were summoned by Grijalva to conduct the search. Plaintiff attempted to sleep but Grijalva asked him to get up so they could search under his mattress. Plaintiff believed that he was being harassed and retaliated by grabbing a cup of water and throwing it at Grijalva. All the staff members in the room then tackled Plaintiff and placed him in restraints. Plaintiff stated that he would not resist and asked for the restraints to be removed, but Grijalva denied his request. Plaintiff was then placed in seclusion and was searched by Grijalva. Grijalva "pulled down plaintiff's pants, pulled out plaintiff's underwear, reached down and grabbed plaintiff's penis, then scrotum, and finally penetrated plaintiff's rectum." (First Am. Compl. ¶ 60, ECF No. 14.) Plaintiff's mechanical restraints were then removed.

Plaintiff requested a blanket because the temperature in the seclusion room was less than sixty degrees Fahrenheit. Defendant[2] refused Plaintiff's request and Plaintiff was forced to curl up on a mattress on the floor with his arms inside his shirt for warmth. Plaintiff was not given anything

---

[2] Plaintiff does not identify which defendant denied Plaintiff's request.

4

to eat or drink for six hours while in the seclusion room.

At some point, Plaintiff had to urinate, so "he tried to lay on his side to enable urination." (First Am. Compl. ¶ 65, ECF No. 14.) However, "Grijalva and other staff came into the seclusion room and tightened plaintiff's mechanical restraints even more; so much more in fact that that[sic] plaintiff's breathing was labored.[3]" (First Am. Compl. ¶ 65, ECF No. 14.) After Grijalva and the other staff left, Plaintiff urinated on the floor. Staff immediately returned to mop up the urine.

A few minutes later, Grijalva and other staff re-entered the seclusion room and prepared Plaintiff's arm with an alcohol pad. A female staff member attempted to stick a needle in Plaintiff's arm, but Plaintiff twisted his arm away. However, staff overcame Plaintiff's resistance and drew blood from Plaintiff without his authorization. Plaintiff also alleges that he was involuntarily injected with some kind of sedative, causing him to fall over and injure his head. Plaintiff alleges he was unconscious for most of the next two days due to the sedative.

Plaintiff was interviewed by a psychiatrist and other staff members over the next few days. Plaintiff claims that the interviews caused him to realize that the incidents over the past few days were "a ruse to intentionally upset plaintiff, so that plaintiff would become enraged." (First Am. Compl. ¶ 76, ECF No. 14.) Plaintiff does not offer any theory as to why Defendants wanted Plaintiff to become enraged. Plaintiff also contends that Grijalva was intimidating him into withdrawing a previous assault complaint Plaintiff had filed against Defendant Perez.

### III. Discussion

#### A. Fourth Amendment Search Claims

Plaintiff claims that Defendants violated his rights under the Fourth Amendment by conducting harassing searches of Plaintiff's person and property. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. A search may be unreasonable under the Fourth Amendment if it is conducted in a harassing manner. Motley v. Parks, 383 F.3d 1058, 1069 (9th Cir. 2004) (discussing harassing searches conducted by parole officers).

---

[3] Plaintiff had previously alleged that his mechanical restraints had been removed. (First Am. Compl. ¶ 61, ECF No. 14.) Plaintiff does not allege when the mechanical restraints had been reapplied.

5

Plaintiff alleges that Defendants Grijalva and Perez repeatedly conducted harassing searches of Plaintiff's person and property between January 29, 2009 and May 2009. Plaintiff alleges that the harassing searches were performed under direct orders by Defendant Sanzberro. (First Am. Compl. ¶ 23, ECF No. 14.) At this stage in litigation, the Court must accept Plaintiff's allegations as true. Based on Plaintiff's allegations, the searches were unreasonable because there was no apparent justification for the searches which were done for the improper purpose of harassing Plaintiff. Accordingly, the Court finds that Plaintiff states cognizable claims against Defendants Grijalva, Perez, and Sanzberro.

### B. Excessive Force/Conditions of Confinement/Involuntary Medication Claims

Plaintiff claims that Defendant Grijalva violated his rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment when Grijalva and other staff members tackled Plaintiff, placed him in restraints in a seclusion room, and involuntarily drew blood and administered medications to Plaintiff.

The Due Process Clause of the Fourteenth Amendment prohibits the use of excessive force that amounts to punishment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). Under the Fourth Amendment, the "objective reasonableness" standard is used to analyze claims of excessive force. Graham, 490 U.S. at 388. In determining whether the use of force was reasonable, the Court must analyze the facts from the viewpoint of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." Gibson, 290 F.3d at 1197 (quoting Graham, 490 U.S. at 396). The analysis must take consideration of the fact that "'officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.'" Id. at 1197-98 (quoting Graham, 490 U.S. at 396-97).

There is an indication that some degree of force was justified when Plaintiff escalated the situation by throwing a cup full of water at Defendant Grijalva. However, when viewing the incident as a whole, Plaintiff has alleged sufficient facts to support the conclusion that the degree of force was unreasonable or amounted to punishment. Plaintiff alleges that he was placed in restraints, held in a cold secluded room without a blanket, and forced to urinate on the floor. Plaintiff further alleges

that staff members drew his blood and involuntarily injected him with a sedative. The Court finds that Plaintiff's allegations are sufficient at this stage in litigation to support claims under the Fourth and Fourteenth Amendment against Defendant Grijalva.

### C.     Equal Protection/42 U.S.C. § 1985 Claims

Plaintiff claims that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005). If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

Plaintiff has not alleged that he suffered any class-based discrimination. Plaintiff has not alleged that he was a member of any identifiable class or that Defendants intentionally discriminated against him because of his membership in any identifiable class. Plaintiff's complaint does not describe any sort of discrimination. Accordingly, Plaintiff fails to state any cognizable claims under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff claims that Defendants are liable under 42 U.S.C. § 1985. Section 1985 provides

a cause of action against persons who conspire to deprive another person of equal protection of the laws. 42 U.S.C. § 1985(3). Liability under Section 1985 is premised on a finding of some racial or other class-based discriminatory animus behind Defendants' actions. See Griffen v. Breckenridge, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action."). Since Plaintiff has alleged no facts that suggest race or class-based discriminatory animus by Defendants, Plaintiff has no claim under Section 1985.

### D. No Leave to Amend

Plaintiff has been previously informed of the deficiencies in his equal protection and Section 1985 claims. The Court will dismiss these claims without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)(dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).

## IV. Conclusion and Order

The Court finds that Plaintiff's first amended complaint states cognizable claims against Defendants Grijalva, Perez, and Sanzberro for conducting unreasonable searches under the Fourth Amendment. Plaintiff also states cognizable claims against Defendant Grijalva for using excessive force, involuntarily administering medications and housing Plaintiff in punitive conditions of confinement.

Plaintiff's first amended complaint does not state any cognizable claims under the Equal Protection Clause or under Section 1985. Accordingly, the Court will dismiss these claims without leave to amend.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's equal protection claims and Section 1985 claims are DISMISSED, without

leave to amend; and

2. This action shall proceed on Plaintiff's claims against Defendant Grijalva, Perez, and Sanzberro for conducting unreasonable searches in violation of the Fourth Amendment, and against Defendant Grijalva for using excessive force, involuntarily administering medications, and housing Plaintiff in punitive conditions of confinement.

IT IS SO ORDERED.

**Dated:   March 4, 2011**                              /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE